NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT FITZGERALD BROWN, | ) | No. C 06-6628 JF (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; |
| vs. | ) ) | DENYING CERTIFICATE OF APPEALABILITY |
| BEN CURRY, Warden, | ) ) | |
| Respondent. | ) ) | |

Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to habeas corpus relief and will deny the petition.

**PROCEDURAL BACKGROUND**

On January 27, 2004, a Santa Clara Superior Court jury convicted Petitioner of robbing Robert Graves, in violation of California Penal Code[1] §§ 211-12.5(c), with the personal use of a firearm, within the meaning of § 12022.53(b); and false

---

[1] All further statutory references are to the California Penal Code.

imprisonment of Mohammad Mir, in violation of §§ 236-37, with the personal use of a firearm, within the meaning of § 12022.5(a).  On June 11, 2004, the trial court sentenced Petitioner to two years for the robbery, plus ten years for the firearm-use enhancement, concurrent to a term of one year and four months for the false imprisonment, plus three years for the firearm-use enhancement, for a total term of twelve years.

Petitioner appealed the judgment.  The California Court of Appeal affirmed on August 10, 2005 and the California Supreme Court denied a petition for review on October 19, 2005.  Petitioner filed the instant federal action on October 24, 2006.

## FACTUAL BACKGROUND

Petitioner does not dispute the following facts, which are taken from the unpublished opinion of the California Court of Appeal[2]:

> At approximately 2:45 p.m. on September 8, 2003, Michael (then 17) was sitting in his car outside of a San Jose gas station with his friend, Mohammad M.  They were having a snack before attending their high school football practice.  Two individuals approached on bicycles. [Petitioner] (who bore arm tattoos with the name "Little Rob") approached the driver's side of Michael's vehicle; codefendant Jacob Dinino approached the passenger's side and "was mugging, giving dirty looks."  Michael had never seen [Petitioner] or Dinino before this incident.  FN2.
>
> FN2.  Both Michael and Mohammad gave unequivocal identifications of [Petitioner] and Dinino as the two persons involved in the September 8, 2003 incident.
>
> [Petitioner] told Michael to get out of his car and instructed him to act as if he knew [Petitioner.]  At that time, [Petitioner] put his left arm through the window opening while he was holding what Michael believed to be a gun.  Mohammad also observed that [Petitioner] was holding a gun.  Both Michael and Mohammad testified that the gun was mostly covered by a blue bandanna; only one and one-half inches (or less) of the gun barrel were exposed.  FN3.  [Petitioner] pointed the gun at Michael's chest, and he felt "slight pressure" from the gun.  Michael was scared by having the gun pointed at his chest.
>
> FN3.  Michael testified that approximately one-quarter of an inch of the gun barrel was exposed; Mohammad testified that approximately one to one-one-half inches of the barrel were

---

[2] People v. Brown, California Court of Appeal, Sixth Appellate District, Case No. H027652 (August 10, 2005). (Resp't Ex. F, p. 2-4.)

1 visible.

2     Michael initially refused [Petitioner's] demand that he get out of the car. [Petitioner] then took the keys out of the ignition (breaking the horn doing so) and threatened to throw them on the gas station's roof; Michael then got out of the car because he was afraid that he would be shot. At that point, Dinino opened the passenger door and pulled Mohammad forcefully out of the car by his shirt. Dinino intimidated Mohammad and challenged him to a fight, saying, "What, bitch, what are you going to do?" Mohammad felt threatened by Dinino and did not feel that he was free to leave.

    After Michael backed away from the vehicle, [Petitioner] searched the center console of the car where Michael had stored $50.00. He took the money against Michael's will. [Petitioner] threw Michael's keys away from the car. [Petitioner] and Dinino then returned to their bicycles and rode off with [Petitioner] yelling, "Little Rob just robbed your ass, bitches." [Petitioner] also mentioned the name of a gang, "Seven Trees Crips." FN4.

    FN4. The reporter's transcript makes several references to "Seven Tree Crypts." We believe these to be references to the Seven Trees Crips street gang.

    On January 3, 2004 - approximately four months after the incident and after Michael had testified at the preliminary examination - [Petitioner] approached Michael at the car wash where he worked. [Petitioner] told Michael that if he were "to get [Petitioner] in trouble, get him arrested . . . he has friends or people out there that would really hate [Michael]." [Petitioner] also "tried to convince [Michael] that there was no gun" used during the incident outside the gas station. FN5.

    FN5. At the preliminary examination, Michael testified that, during the September 8, 2003 incident, [Petitioner] pointed at him what he thought was a gun that (except for part of the barrel) was covered by a blue bandanna.

## LEGAL CLAIMS

In his federal habeas petition, Petitioner claims that there was insufficient evidence to support the jury's findings on the firearm enhancements.

## DISCUSSION

**A.    Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under the AEDPA, a federal court may not grant habeas relief with respect to a state court

proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a

reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000). In this case, the last state court to address the merits of Petitioner's claim is the opinion of the California Court of Appeal.

**B.      Analysis of Legal Claim**

Petitioner claims that the evidence produced at trial to prove the use of a firearm was insufficient as a matter of law. Petitioner argues that no firearm was ever discovered and the witnesses' speculation was not enough to establish that Petitioner was using a firearm as defined in the statutes.

The relevant penal code sections are 12022.53(b) and 12022.5(a). Section 12022.53(b) provides:

> Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply.

Section 12022.5(a) provides:

> . . . any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense.

For purposes of these sections, a firearm means "any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion." Cal. Penal Code § 12001.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim. See Jackson v. Virginia, 443 U.S. 307, 321 (1979). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal

court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. See Jackson, 443 U.S. at 324.

On habeas review, a federal court evaluating the evidence under Winship and Jackson should take into consideration all of the evidence presented at trial. LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief). If confronted by a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).

In this case, the appellate court identified the relevant standards of review as those set out in Jackson and applied California cases with standards entirely consistent with controlling federal law: the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Therefore, the standards applied by the appellate court were not contrary to Supreme Court precedent. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Accordingly, the Court asks whether the decision of the California Court of Appeal "reflected an 'unreasonable application of' Jackson and Winship to the facts of this case." Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005) (citations omitted).

On direct appeal, California Court of Appeal rejected Petitioner's claim, stating in part:

Here, Michael testified that [Petitioner] demanded that he get out of his car while he had in his left hand "[a] bandanna covering what [Michael] believe[d] was a gun." Although Michael "only saw about a quarter of an inch of . . . the [gun] barrel," he believed that it was a real gun. Mohammad also observed that [Petitioner] held a gun to Michael's chest. [Petitioner] pointed the gun at Michael's chest, and he felt "slight pressure" from the gun, and this scared him. He complied with [Petitioner's] demand that he get out of the car because Michael was afraid that he would be shot. The jury could well have found that the victims' testimony concerning [Petitioner's] firearms use was corroborated by evidence that (1) both victims clearly told Carozzo shortly after the incident that they had been robbed at gunpoint; and (2) [Petitioner] attempted to alter Michael's testimony by threatening him and suggesting that Michael testify that he had not seen a gun.

[Petitioner's] challenge is essentially that the firearms enhancements must be stricken because both victims testified on cross-examination that the mostly-concealed object [Petitioner] held to Michael's chest could have been a pipe. This argument would have us ignore the remainder of the victims' testimony that, although the blue bandanna concealed most of the object, they both saw the end of the barrel and strongly believed that it was a gun. Acceptance of [Petitioner's] position would also require us to disregard the potential evidentiary impact of [Petitioner's] attempt to dissuade Michael from testifying that he had seen a weapon, upon threat of reprisal; this evidence could have been construed by the jury as a circumstance showing [Petitioner's] consciousness of guilt concerning his use of a firearm during the incident. (See CALJIC No. 2.06 (Jan. 2005 ed.) [suppression of evidence by [Petitioner's] intimidation of witness "may be considered . . . as a circumstance tending to show a consciousness of guilt"].)

Further, our acceptance of [Petitioner's] contention would be tantamount to concluding that the firearms enhancements must be stricken because no weapon was ever produced. But in order to establish a firearms-use enhancement, the prosecution is not required to either produce the firearm or establish that it was operable. See People v. Williams (1976) 56 Cal. App. 3d 253, 255. Moreover, the Green, Jacobs, and Dominguez cases cited above each stand for the proposition that the prosecution need not prove the firearms enhancement by establishing that the victim or witness actually observed the defendant using the weapon. It would be indeed anomalous - and inconsistent with these authorities - to reverse the firearms findings here because the witnesses testified that they observed a gun but did not get a full view of it.

In conclusion, we find there to have been "substantial evidence support[ing] the conclusion of the trier of fact," People v. Johnson, supra, 26 Cal. 3d at p. 576, that [Petitioner] personally used a firearm to commit the charged crimes in violation of section 12022.53, subdivision (b), and section 12022.5, subdivision (a). The evidence presented to the jury supporting the firearms enhancements was, indeed, " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.'" People v. Johnson, supra, at p. 576. Thus, after viewing the evidence in a light most favorable to the

> judgment and giving proper deference to the jury's role as fact finder, see People v. Barnes, supra, 42 Cal. 3d at pp. 303-304, we reject [Petitioner's] challenge to the sufficiency of the evidence supporting the firearms enhancements.

(Resp't Ex. F, p. 7-10.) (Internal footnotes omitted.)

Under Jackson, this Court must look to state law to determine what evidence is necessary to sustain the conviction. See Jackson, 443 U.S. at 324 n.16. In California, the evidence is sufficient to prove the use of a firearm where there is "some type of display of the weapon, coupled with a threat to use it which produces fear of harm in the victim." People v. Dominguez, 38 Cal. App. 4th 410, 421 (1995).

On this record, the Court finds that, although no firearm was recovered, the victims' testimony describing the weapon and the manner in which it was used during the crime was sufficient evidence to enable a reasonable juror to conclude beyond a reasonable doubt that Petitioner personally used a firearm within the meaning of §§ 12022.5(a) and 12022.53(b). Mindful of the "sharply limited nature of constitutional sufficiency review" and applying the "additional layer of deference" required by the AEDPA, this Court is cannot find that the California court's rejection of this claim was objectively unreasonable. Juan H., 408 F.3d at 1274-75; see also Jackson, 443 U.S. at 319, 326. .

Accordingly, the state court's decision to reject this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2).

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED. The clerk shall forward to the court of appeals the case file with this order. See Fed. R. App. P. 22(b).

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus and COA are DENIED.

The Clerk shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

DATED: 1/29/10

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FITZGERALD BROWN,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>BEN CURRY,<br><br>　　　　　Respondent.<br>_____/ | Case Number: CV06-06628 JF<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  2/17/10 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Robert Fitzgerald Brown V63609
LaPalma Correctional Center
5501 N. LaPalma Road
Eloy, AZ 85231

Dated:  2/17/10

　　　　　　　　　　　　　　　　　　　　Richard W. Wieking, Clerk
　　　　　　　　　　　　　　　　　　　　By: Diana Munz, Deputy Clerk

Robert Fitzgerald Brown V63609
LaPalma Correctional Center
5501 N. LaPalma Road
Eloy, AZ 85231


CV06-06628 JF